UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                     :

TALENTHUB WORLDWIDE, INC.,          :
                                     :
                         Plaintiff,   :         24 Civ. 6264 (LGS)
           -against-             :
                                       :
TALENTHUB WORKFORCE, INC., et al.,    :        **OPINION & ORDER**
                                       :
                           Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Talenthub Worldwide, Inc., ("Plaintiff") brings this action against Defendants

Talenthub Workforce, Inc. ("Talenthub Workforce"), Eric Goldstein, Standard Consulting, Inc.,

Diane Porembski, Patricia Kampel, Tanya Wilson, Jeannine Triolo, Valerie West, Joseph

Lipinski and J Computer Pro, Inc. alleging that Defendants misappropriated Plaintiff's

technology and trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), Computer

Fraud & Abuse Act ("CFAA") and New York law.  Defendants move to dismiss the First

Amended Complaint ("FAC"), the operative complaint, under Federal Rules of Civil Procedure

12(b)(2) and 12(b)(6).  For the reasons below, the motion is granted.

## I.     BACKGROUND

       The following facts are taken from the FAC, documents it incorporates by reference and

documents "known to the plaintiff and upon which it relied in bringing this suit."  *In re Shanda*

*Games Ltd. Sec. Litig.*, 128 F.4th 26, 41 (2d Cir. 2025).  The Court also takes judicial notice of

the complaint and proceedings in the related New York state actions.  *See Simmons v. Trans*

*Express Inc.*, 16 F.4th 357, 360 (2d Cir. 2021) ("The district court properly took judicial notice of

documents indicating the claims [the plaintiff] brought in small claims court, the remedies she

sought, and the judgment she was awarded.").[1]  These facts are assumed to be true for purposes of this motion and are construed in the light most favorable to Plaintiff as the non-moving party. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).

### A.      Plaintiff's Business Operations

Plaintiff is a temporary employee staffing company that was founded in 2013 by its current majority owner, Gary Glass.  The individual Defendants all worked for Plaintiff in managerial or other "high-level" capacities at some time between 2013 and January 2022.  To manage its business and employees, Plaintiff utilized a cloud-based staffing platform called Avionté.  Plaintiff also secured "access to all information related to Temporary Employees and Clients, and other Worldwide Trade Secrets, through . . . Avionté," which required "login credentials" to view.  Those trade secrets included Plaintiff's "business model and Client lists"; "list of Temporary Employees" and their personal information and "onboarding information"; "weekly sales reports"; "accounts receivable aging reports"; "weekly, quarterly, and annual payroll reports" and "proprietary information regarding each of its Clients," such as proposal letters and notes from client calls.

### B.      Talenthub Workforce's Creation

In May 2021, Glass and two individual Defendants created Talenthub Workforce as a "separate company" to provide temporary staffing services in response to Plaintiff's largest customer's preference to work with businesses with Minority and Women Owned Business Enterprise certification.  Talenthub Workforce's "only purpose . . . was to assist Worldwide serving the needs" of that customer.  Plaintiff provided Talenthub Workforce with loans to

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

support the company in its early stages.  After the company was formed, several individual Defendants began working for both Talenthub Workforce and Plaintiff.

### C.    Plaintiff and Workforce's Split

After Talenthub Workforce's creation, the business relationship between Defendants and Plaintiff began to sour.  Subsequently, on January 6, 2022, the individual Defendants resigned from Plaintiff and began to work at Talenthub Workforce full time.  Talenthub Workforce then became "a fully functioning direct competitor" to Plaintiff.  The FAC alleges that Defendants continued to use Plaintiff's trade secrets without permission after the split using stolen computer equipment and through access to Plaintiff's "Avionté account without authorization."

Over the next few months, the parties exchanged several letters regarding the stolen computers and other disputes.  On April 26, 2022, Plaintiff sent Defendants a letter with various demands regarding money Defendants owed to Plaintiff and offered Defendants their own Avionté login credentials.[2]  On July 11, 2022, Plaintiff sent Defendants another letter stating that "it ha[d] very recently been discovered" that Plaintiff's computers had been stolen and that "it [was] clear . . . that [Defendants] have intentionally continued to access [Plaintiff's computers] . . . without authorization."[3]  On September 27, 2023, Defendants returned the computers.

---

[2] The April 26, 2022, letter may be considered on this motion because the letter is a "document[] possessed by or known to the [P]laintiff and upon which it relied in bringing this suit."  *In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th at 41.  The FAC alleges that Plaintiff "repeatedly demanded that [Defendants] return" the stolen property after Plaintiff discovered the property was missing in early 2022.  The April 26, 2022, letter was one such demand.  In the letter, Plaintiff requested Defendants to restore access to Plaintiff's "books and records," because "none of [the property] belong[ed] to [Defendants]."  The letter was signed by Plaintiff's former counsel, and Plaintiff does not dispute that the letter may be considered on this motion.  *See Goldenberg v. Transunion, LLC*, No. 23 Civ. 9514, 2025 WL 2200486, at *1 n.3 (E.D.N.Y. Aug. 1, 2025) (considering extrinsic letters in deciding motion to dismiss where the letters were signed by the plaintiff and "discuss[ed] . . . []related allegations in the [c]omplaint," and therefore were "possessed by or known to the plaintiff" and relied on by plaintiff in bringing the suit).

[3] The FAC expressly references the July 11, 2022, letter and its language, which are therefore "incorporated in the [FAC] by reference."  *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023).

D.      **Related New York State Actions and This Action**

On July 20, 2023, Gary Glass filed a lawsuit against Talenthub Workforce in state court, requesting to inspect the company's books and records as a shareholder.  *See Glass v. Talenthub Workforce Inc.*, index No. 157302/2023 (N.Y. Sup. Ct., N.Y. County).  On September 13, 2023, individual Defendant Eric Goldstein initiated a separate state court action, seeking damages for breach of contract.  *See Goldstein v. Glass et al.*, index No. 654474/2023 (N.Y. Sup. Ct., N.Y. County).  On August 19, 2024, Plaintiff filed this action against Defendants.  On November 8, 2024, Plaintiff filed the FAC.

## II.      DISCUSSION

The FAC alleges that Defendants misappropriated Plaintiff's computers, data and trade secrets in violation of the DTSA, CFAA and New York law.  As discussed below, Defendants' motion to dismiss the FAC is granted.

A.      **Federal Claims (DTSA and CFAA)**

1.      **CFAA Claim**

Defendants move to dismiss the FAC's CFAA claims as untimely under the CFAA's statute of limitations.  "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."  *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015); *accord Elliott v. City of New York*, 723 F. Supp. 3d 249, 260 n.4 (S.D.N.Y. 2024).  The CFAA provides a private right of action to "[a]ny person who suffers damage or loss by reason of a violation" of the statute, which criminalizes various forms of intentional, unauthorized computer access.  18 U.S.C. § 1030(g).  "To be timely, such a civil suit must be filed within 2 years of the date of the act complained of or the date of the discovery of

the damage." *Sewell v. Bernardin*, 795 F.3d 337, 340 (2d Cir. 2015).  Under the CFAA, "damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).

The FAC's CFAA claim is dismissed because it is barred by the CFAA's two-year statute of limitations.  The FAC alleges that, on July 11, 2022, Plaintiff sent a letter to Defendants "specifically advis[ing] [Talenthub Workforce] that its ongoing conduct gave rise to claims against [Talenthub Workforce] for its misappropriation of [Plaintiff's] confidential information and trade secrets."  The FAC further states that "[t]he July 11, 2022[,] letter also laid out [Plaintiff's] claims against [Talenthub Workforce] for violations of the Computer Fraud & Abuse Act."  It is clear on the face of the FAC that Plaintiff was aware of its potential CFAA claim against Defendants as early as July 11, 2022.  Plaintiff filed suit more than two years later on August 19, 2024.

Plaintiff's argument that the July 11 letter "merely postulated possible, hypothetical claims" cannot be squared with the letter itself, which, under a section titled "Claim for Violation of the Computer Fraud and Abuse Act," states that Plaintiff was aware that Defendants were "intentionally continu[ing] to access [Plaintiff's] computer and e-mail systems, without authorization."  Plaintiff's CFAA claim is untimely "on the face of the" FAC.  *Powell v. Lab Corp.*, 789 F. App'x 237, 239 (2d Cir. 2019) (summary order); *see Verschleiser v. Frydman*, No. 22 Civ. 7909, 2023 WL 5835031, at *7 (S.D.N.Y. Sept. 7, 2023) (CFAA claim untimely where complaint alleged damage was discovered outside 2-year limitations period).

Plaintiff argues that the statute of limitations for its CFAA claim "did not begin to run until at least September 27, 2023[,] when Plaintiff was given back the two computers and they could be inspected for damage and any unauthorized access."  Plaintiff is incorrect.  In *Sewell v.*

*Bernardin*, plaintiff brought a CFAA claim against a defendant after he had gained unauthorized access to her computer files and personal information by stealing her email passwords. 795 F.3d at 339. The Second Circuit held that the "CFAA's statute of limitations began to run when Sewell learned that the integrity of her account had been impaired" -- i.e., "when she learned that she could not log into her AOL e-mail account." *Id.* at 340. The Court emphasized that whether a plaintiff knows "exactly what happened or why she [has lost access] is of no moment"; "if a plaintiff cannot discover the [violator's] identity within two years of the date she discovers the damage or violation, her claims under the CFAA . . . will be untimely." *Id.* at 340-42.

Similarly here, the FAC alleges that Plaintiff "learned that the integrity of [its computers] had been impaired" no later than July 11, 2022, when Plaintiff sent its demand letter to Defendants stating that it had "discovered that a valuable, external hard drive . . . had been taken" from its offices and "la[ying] out [Plaintiff's] claims against [Defendants] for violation of the Computer Fraud & Abuse Act." *See id.*; *El Omari v. Dechert LLP*, No. 23 Civ. 4607, 2024 WL 1509683, at *6 (S.D.N.Y. Feb. 22, 2024) (CFAA claim began to run "as soon as [plaintiff] clicked on" a hacker's link and thus "discovered the intrusion" on his computer), *report and recommendation adopted sub nom. El Omani v. Dechert LLP*, No. 23 Civ. 4607, 2024 WL 3517429 (S.D.N.Y. June 24, 2024), *aff'd sub nom. El Omari v. Dechert LLP*, No. 24-1970, 2025 WL 1618359 (2d Cir. June 9, 2025). Thus, the statute of limitations for Plaintiff's CFAA claim began to run no later than July 11, 2022, and not when Plaintiff inspected the computers for damage on September 27, 2023.

Plaintiff argues that the statute of limitations should be equitably tolled because Defendants "fraudulent[ly] conceal[ed]" their theft until September 27, 2023, which "prevented [Plaintiff] from asserting a timely [CFAA] claim." "Generally, a litigant seeking equitable

tolling bears the burden of establishing two elements: (1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way." *Clark v. Hanley*, 89 F.4th 78, 92 (2d Cir. 2023). "[E]quitable tolling is applicable only in rare and exceptional circumstances." *Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013). Plaintiff has shown neither diligence nor extraordinary circumstances sufficient to justify tolling. Plaintiff's argument that Defendants' concealment of their computer theft prevented Plaintiff from filing suit is contradicted by the July 11, 2022, letter, in which Plaintiff stated that "it [was] clear . . . that [Defendants] have intentionally continued to access [Plaintiff's] computer and e-mail systems, without authorization." As equitable tolling is unwarranted, the CFAA claim is dismissed. *See Zarate v. Chase Bank*, No. 22 Civ. 1178, 2023 WL 5956334, at *6 (E.D.N.Y. Sept. 13, 2023) (no equitable tolling where plaintiff failed to show extraordinary circumstances or reasonable diligence).

### 2.    DTSA Claim

Defendants move to dismiss the DTSA claim for failure to state a claim. That claim is dismissed because the FAC fails to allege facts sufficient to show that the misappropriated information was a trade secret.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ] . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). Under Rule 12(b)(6), a court

"accept[s] as true all well-pleaded factual allegations, draw[s] all reasonable inferences in the plaintiff's favor, and assess[es] the complaint to determine whether those allegations plausibly establish entitlement to relief." *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024). A court does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret and (2) the defendant misappropriated the trade secret. 18 U.S.C. § 1836(b)(1). Under the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). "In assessing DTSA claims, courts in this Circuit often look to New York trade secret law." *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021). "If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the trade secret, his property right is extinguished." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 182 (2d Cir. 2023) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)).

Plaintiff's DTSA claim fails because the FAC's allegations demonstrate that Plaintiff "voluntarily shared the [trade secrets] with Defendants without any reasonable measures to protect the secrecy of the information." *Ahmad v. Day*, No. 24 Civ. 4507, 2023 WL 3847144, at *6 (S.D.N.Y. June 6, 2023). The FAC alleges that Plaintiff allowed Defendants access to its

Avionté platform, on which Plaintiff held "all information related to Temporary Employees and Clients, and other Worldwide Trade Secrets."  That access was voluntarily shared without reasonable confidentiality restrictions, such as a confidentiality agreement, and was provided even after Defendants began independently operating and openly competing with Plaintiff in January 2022, as evidenced by Plaintiff's April 26, 2022, letter in which Plaintiff offered Defendants "two passwords or separate accounts" so both parties could still have access to the Avionté platform.  The FAC's DTSA claim fails because the FAC "d[oes] not plausibly plead that [Plaintiff] took reasonable measures to protect" its information from Defendants.  *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 451 (2d Cir. 2021) (summary order) ("To prevail on a claim for misappropriation of trade secrets under the DTSA . . . the claimant must show that he took reasonable measures to protect his trade secret or confidential information.").

While the FAC alleges that Plaintiff took certain measures to protect its information, such as restricting access to Plaintiff's employees with "login credentials" and requiring certain temporary employees to sign confidentiality agreements, Plaintiff's simultaneous "[d]isclos[ure of its] trade secret[s] to [Defendants] who are under no obligation to protect the confidentiality of the information ultimately extinguishes that property right."  *Sapir v. Rosen*, No. 20 Civ. 6191, 2021 WL 4482277, at *6 (S.D.N.Y. Sept. 30, 2021); *see Rodney v. United Masters*, No. 21 Civ. 5872, 2023 WL 2184865, at *5 (E.D.N.Y. Feb. 10, 2023) (dismissing DTSA claim where plaintiff "had no confidentiality agreement with the individual to whom he voluntarily disclosed" his trade secrets, despite plaintiff's "utiliz[ation of] passwords, security, limited disclosure of the

information, and requir[ing] [individuals other than defendants] to sign confidentiality agreements").

That Plaintiff originally shared its trade secrets with Defendants pursuant to a business relationship makes no difference. *See Zabit*, 540 F. Supp. 3d at 425 (dismissing DTSA claim where complaint was "rife with allegations acknowledging" that plaintiff shared its trade secrets with business partners "but were not subject to any confidentiality agreements or otherwise instructed to keep the information confidential"). While the FAC does allege that Plaintiff provided Defendants access to its trade secrets on Avionté "under circumstances giving rise to a duty to maintain their secrecy or limit their use," such "a duty of loyalty . . . does not somehow transform th[at] freely-shared information into a secret." *Id.* at 427. "To hold otherwise would risk expanding the limited category of trade secrets to cover any confidential information." *Id.* Plaintiff's unrestricted, voluntary sharing of its trade secrets with Defendants "is thus fatal to [its DTSA] claim." *Ahmad*, 2023 WL 3847144, at *6; *see UrthTech LLC v. GOJO Indus., Inc.*, No. 22 Civ. 6727, 2023 WL 4640995, at *13 (S.D.N.Y. July 20, 2023) (dismissing DTSA claim where complaint "allege[d] that [plaintiff] . . . shared its [trade secret] with outside researchers but d[id] not indicate that such disclosures were themselves subject to confidentiality agreements").

Plaintiff argues that sharing its trade secrets with Defendants did not "undermine [the trade secrets'] protection under the DTSA" because "Workforce was never envisioned to be a separate company from Worldwide." In other words, Plaintiff contends that Workforce and Plaintiff essentially operated as one company and therefore Plaintiff did not share its trade secrets with an "outside business partner[]." But that argument is contradicted by the FAC, which alleges that Plaintiff "formed Talenthub Workforce Inc. as a separate company" and

consistently describes Talenthub Workforce as a "separate" entity that competed with Plaintiff. Plaintiff's argument that all of its trade secrets were not necessarily on Avionté is similarly contradicted by the FAC's allegations that Defendants "had access to Worldwide Trade Secrets . . . because [certain Defendants] had complete access to Avionté."

Plaintiff also argues that its sharing of its trade secrets "was not a voluntary disclosure" because the sharing was "a part of the good-faith efforts to resolve the situation [with Defendants] in a non-litigious manner." That argument is unavailing because, regardless of Plaintiff's motives, the FAC and April 26, 2022, letter make clear that Plaintiff shared its trade secrets with Defendants of its own volition. Plaintiff's DTSA claim is dismissed. *See Pauwels*, 83 F.4th at 183 (affirming DTSA claim dismissal where plaintiff "disclosed the [trade secrets] to [third parties] who were not obligated to keep his materials secret").

### B.    Remaining State Law Claims

The remaining causes of action assert claims that arise under state common law. These claims are dismissed as Plaintiff does not adequately plead diversity of citizenship sufficient to support federal subject matter jurisdiction, and the Court declines to exercise supplemental jurisdiction.

#### 1.    Diversity Jurisdiction

In the absence of a federal claim, the parties' diversity of citizenship may provide an alternate basis for federal subject matter jurisdiction, which would require the court to adjudicate the state law claims. Federal courts have jurisdiction over disputes between "citizens of different States" when the matter in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires "complete diversity of citizenship between every plaintiff and every defendant." *Windward Bora LLC v. Browne*, 110 F.4th 120, 125-26 (2d Cir. 2024). "A

11

corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

Here, the parties are not diverse.  The FAC alleges that Plaintiff was incorporated in New York with offices located in New York; Defendants Talenthub Workforce and J Computer Pro Inc. are each a New York corporation, with its principal place of business in New York; and Defendant Standard Consulting Inc. is a Delaware corporation with its principal place of business in New York.  The FAC further alleges that all of the individual Defendants are domiciled in New York.

### 2.    Supplemental Jurisdiction

Federal district courts may adjudicate state law claims based on supplemental jurisdiction when the complaint reasonably alleges a viable federal claim within the district court's original jurisdiction.  28 U.S.C. § 1367(a).  Whether to exercise supplemental jurisdiction after dismissing the federal claims is a matter within the district court's discretion.  *See Cangemi v. United States*, 13 F.4th 115, 135 (2d Cir. 2021).

Here, the Court declines to exercise supplemental jurisdiction.  "[T]he default rule is that federal courts should not decide related state-law claims unless there is good reason for doing so."  *Id.*; *accord Maxius v. Mount Sinai Health Sys. Inc.*, No. 21 Civ. 10422, 2024 WL 4166157, at *9 (S.D.N.Y. Sept. 12, 2024).  Such reasons may include a "court's long history with th[e] case and familiarity with the issues."  *Cangemi*, 13 F.4th at 135.  At this early stage of litigation, and in light of the pending New York state court proceedings involving related issues, it is appropriate to decline to exercise supplemental jurisdiction over the remaining state law claims.

### III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

Plaintiff may seek leave to replead the DTSA claim.  Should Plaintiff seek leave to replead the DTSA claim, by October 3, 2025, Plaintiff shall (1) file a letter motion, not to exceed five pages, explaining how a Second Amended Complaint ("SAC") would allege facts curing the failure to plead a trade secret under the DTSA, and (2) append to the letter motion a draft of the proposed SAC marked to show changes from the FAC.  Within seven days of the filing of any such letter motion, Defendants shall file a letter response not to exceed five pages.  Plaintiff may not seek leave to replead the CFAA claim because better pleading would not cure the lack of timeliness.  If no motion is filed, the CFAA claim and the DTSA claim will be dismissed with prejudice and the state law claims will be dismissed without prejudice.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 47.

Dated: September 5, 2025
     New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE